

July 30, 2020

*Via ECF*
> Defendant is directed to respond by August 7, 2020.
> SO ORDERED.
>
> _[signature]_
> Edgardo Ramos, U.S.D.J
> Dated: July 30, 2020
> New York, New York

**Orrick, Herrington & Sutcliffe LLP**
1000 Marsh Road
Menlo Park, CA 94025

+1 650 614 7400
orrick.com

Amy Van Zant
E avanzant@orrick.com
D +1 650 614 7403

Judge Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

**MEMO ENDORSED**

Re:   *Tradeshift, Inc. v. Smucker Services Company*, Case No. 1:20-cv-3661-ER

Honorable Judge Edgardo Ramos:

We represent Plaintiff Tradeshift, Inc. ("Tradeshift") and write pursuant to Rule 2(A)(ii) of your Honor's Individual Practices. Tradeshift requests a pre-motion conference regarding a motion to dismiss certain of Defendant Smucker Services Company's ("Smucker") counterclaims.

## Background

Tradeshift filed its complaint on May 11, 2020. Dkt. No. 1 ("Compl."). The complaint alleges that Tradeshift entered into a contract with Smucker on June 30, 2019 (the "Agreement") to implement and license a software product to Smucker. Compl. ¶ 6. Within the first seven months of the project, however, BuyerQuest (Tradeshift's subcontractor) convinced Smucker to breach its contract with Tradeshift in favor of a direct contract with BuyerQuest for less money. *Id.* ¶¶ 11-16. In order to get out of the contract—which specified limited grounds for termination—Smucker accused Tradeshift of fraud and argued that the contract was thus voidable at Smucker's option.[1] *Id.* ¶¶ 12-13.

Smucker's June 26, 2020 Answer (Dkt. No. 16) asserts counterclaims for fraudulent inducement, fraudulent misrepresentation, and negligent misrepresentation (the "fraud claims") and breach of contract. *Id.* Smucker's fraud claims allege that Tradeshift made certain misrepresentations in its responses to (1) a Request for Proposal ("RFP") and (2) a Business Requirements Document ("BRD") preceding the Agreement. *Id.* ¶¶ 19-58. Incorporating those same allegations, Smucker asserts that Tradeshift breached the parties' contract for the same reasons. *Id.* ¶¶ 87-89.

## Argument

Tradeshift seeks permission to file a motion to dismiss Smucker's fraud claims. To plead each of those claims, Smucker must allege that it reasonably relied on a material misrepresentation. *See e.g.*, *Dexia SA/NV v. Bear, Stearns & Co.*, 929 F. Supp. 2d 231, 237 and 244 (S.D.N.Y. 2013). Moreover, pursuant to Fed. R. Civ. P. 9(b) Smucker must state the circumstances

---

[1] The contract required Smucker to provide written notice of any alleged material breach(es) and provide Tradeshift with 30 days to correct that breach before termination. *Id.* ¶ 9. In order to move forward quickly, Smucker ignored this provision and accused Tradeshift of fraud, arguing that the fraud voided the entire agreement. *Id.* ¶ 16.



The Honorable Edgardo Ramos
July 30, 2020
Page 2

constituting the fraud with particularity. *Id.* at 238. Smucker's allegations fall far short of these requirements and should therefore be dismissed.

Smucker's fraud claims are based on two sets of alleged misrepresentations: (1) statements regarding the capabilities of Tradeshift's software and (2) statements regarding Tradeshift's business (*e.g.*, its financings, revenue, and experience).

The first set of allegations include statements about the capabilities of Tradeshift's product, *i.e.*, its ability to meet certain of Smucker's business requirements. *See e.g.*, *id.* ¶ 48 ("the ability to have one to many supplier site relationships . . . the ability to customize the entry form.") These allegations cannot support Smucker's fraud claims for several reasons:

*First*, Smucker could not have reasonably relied on these statements given specific language found in the parties' Agreement. The Agreement specifically states that "[t]his Agreement and any Service Schedules <u>supersede all prior oral or written understandings, representations, negotiations and correspondence between the Parties</u> [and] constitute the entire agreement between them with respect to the matters described . . . ."[2] (emphasis added). More importantly, and foreclosing any doubt that Smucker could not have relied on such statements in the RFP and BRD, the Agreement includes the following all-cap disclaimer regarding the capability of Tradeshift's products: "SERVICE PROVIDER MAKES NO ADDITIONAL WARRANTIES OF ANY KIND WHETHER EXPRESS, IMPLIED. . . AS TO THE SERVICES, DELIVERABLES, OR DOCUMENTATION" including "IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."[3] New York courts routinely dismiss fraud claims at the pleading stage in the face of such contractual disclaimers because they negate any allegation that the plaintiff *reasonably* relied on such prior representations. *See e.g. DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 319 (S.D.N.Y. 2002) (at pleading stage, dismissing fraud claims in view of contractual disclaimers); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320–21 (1959) (same); *Harsco Corp. v. Segui*, 91 F.3d 337, 345–46 (2d Cir. 1996) (same).

*Second*, and separately, these alleged misrepresentations are duplicative of Smucker's alleged breach of contract claim. Courts dismiss fraud-based claims as duplicative of breach of contract claims in cases, like this one, where the alleged misrepresentations are nothing more than

---

[2] Tradeshift intends to submit a copy of the Smucker Services Agreement under seal, which the Court can consider on a motion to dismiss as "integral" to Smucker's complaint. *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017)

[3] Disclaimers like this are important because they preclude one party from arguing an interpretation of obligations that is not supported by the plain language of the contract. Such disclaimers ensure that the terms of the contract govern rather than, as here, after-the-fact allegations about alleged promises made during the negotiation process..



assurances that the delivered product will comply with agreed upon specifications. *See e.g., Vorcom Internet Servs., Inc. v. L & H Eng'g & Design LLC*, 2013 WL 335717, at *4 (S.D.N.Y. Jan. 9, 2013) ("Here, plaintiff has failed to identify any statements made by [Defendant] upon which plaintiff relied in deciding to purchase the vans . . . other than [Defendant's] assurance that the vehicles would be delivered as promised under the contract."); *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) ("[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract."). Smucker's breach of contract claim is entirely duplicative of its fraud-based claims because both rely on Tradeshift's alleged failure to meet the business requirements established in the RFP and BRD. Indeed, in alleging its breach of contract counterclaim, Smucker does nothing more than incorporate the entirety of its fraud-based claims and state that "[f]or all the reasons stated above, Tradeshift committed a material breach of the Services Agreement . . . ." CC ¶¶ 87-88.

*Third,* Smucker fails to "explain why the statements were fraudulent," which it must do to satisfy Rule 9(b). *See e.g.*, *Dexia*, 929 F. Supp. 2d at 238. Smucker does not, for example, explain why it contends Tradeshift could not satisfy each of the specified requirements.

The second set of alleged misrepresentations are statements about Tradeshift's experience, size, and revenue. *See e.g.,* CC ¶ 28 ("Tradeshift represented that is revenue was $300-$500 million in the preceding year"). These allegations also cannot support Smucker's fraud claims because Smucker does not allege that it relied on these statements. To the contrary, Smucker alleges only that it relied on statements about the capabilities and functionality of Tradeshift's products. *Id.* ¶ 37 ("A material consideration leading Smucker to select Tradeshift and enter into the Services Agreement was the numerous representations made by Tradeshift in its RFP and BRD submissions <u>regarding the capability and functionality of its services platform.</u>") (emphasis added); *see also id.* ¶ 59 ("<u>Had Tradeshift accurately represented its capabilities</u>, Smucker would never have entered into the Services Agreement."). And, even if Smucker had alleged such reliance, it would likely not be *reasonable* reliance given the contractual disclaimers discussed above. And, again, Smucker also fails to "explain why the statements were fraudulent" under Rule 9(b), including by explaining why it contends the statements were false.

Finally, Smucker's claim for negligent misrepresentation fails for the additional reason that Smucker does not allege a special relationship between Smucker and Tradeshift, which is an essential element of the claim. *Capax Discovery, Inc. v. AEP RSD Inv'rs, LLC*, 285 F. Supp. 3d 579, 591 (W.D.N.Y. 2018).

Smucker has not adequately pleaded its counterclaims for fraud claims particularly under the heightened pleading requirements of Rule 9(b). For these reasons, Tradeshift respectfully requests a pre-motion conference to obtain approval to file a motion to dismiss.



Respectfully submitted,

*/s/ Amy K. Van Zant*

Amy K. Van Zant


cc: Ronie M. Schmelz ronie.schmelz@tuckerellis.com
Chelsea Mikula chelsea.Mikula@tuckerellis.com
Richard F. Martinelli rmartinelli@orrick.com
Jason K. Yu jasonyu@orrick.com