Tucker Ellis LLP

950 Main Avenue, Suite 1100 | Cleveland, OH 44113-7213 | TEL 216.592.5000 | FAX 216.592.5009

June 3, 2021

DIRECT DIAL 216.696.2476 | chelsea.mikula@tuckerellis.com

The Honorable Edgardo Ramos
United States District Court Judge
Southern District of New York
40 Foley Square, Courtroom 619
New York, New York 10007

*Re: Tradeshift, Inc. v. Smucker Services Company*, Case No. 1:20-cv-3661

Dear Judge Ramos:

Defendant and Counter-Plaintiff Smucker Services Company ("Smucker") submits this opposition to Plaintiff and Counter-Defendant Tradeshift, Inc.'s ("Tradeshift") Letter Brief Re Document Requests Nos. 9, 16-17, and 19-20 ("Letter Brief").

The issue presented by Tradeshift's Letter Brief is not whether Smucker made an adequate production in response to the RFPs at issue. It is a veiled attempt to re-write Smucker's search terms and prevent this case from moving forward. But Tradeshift's attempt is too late. It chose not to negotiate search terms at the outset of discovery, and now believes—after months of possessing Smucker's production and in the middle of depositions—that it can broaden Smucker's search terms without identifying any particular information it is missing. Smucker's selection of search terms and custodians, however, was diligent and nowhere near the "manifestly unreasonable" standard that would require Court intervention. Smucker therefore requests the Court deny future motion practice following a conference with the parties.

## I. Nature of the Case

This case arises out of a terminated services agreement ("Agreement") between Tradeshift and Smucker. In short, there are two key issues: whether Smucker is required to pay Tradeshift for services it promised under the Agreement and whether Tradeshift misrepresented its experience, financials, and capabilities to induce Smucker into the Agreement in the first place. Tradeshift continually seeks to expand the scope of this case by conflating it with a related action pending in the Northern District of California. There, Tradeshift sued its former subcontractor, BuyerQuest, alleging it interfered with the Agreement. Here, however, the issues are more limited, involving two critical periods: pre-Agreement (January-June 2019) and termination (January 2020). Every document that mentions work under the Agreement is simply not relevant, much less proportional to the needs of this case.

## II. History of Discovery Efforts

A summary of discovery efforts alone shows the incongruity of Tradeshift's Letter Brief. On August 18, 2020, Tradeshift served its first set of RFPs on Smucker, including all the RFPs at issue. The parties did not seek agreement on the parameters of Smucker's collection, so Smucker identified key custodians, formulated reasonable terms, and conducted its search in response to each RFP.

This initial search included 16 custodians. It also included all documents stored on the Tradeshift P2P SharePoint drive and the platform used during vendor selection. Smucker erred on the side of being over-inclusive, searching key custodians using broad terms, including "Tradeshift," "procure," "P2P," and "BuyerQuest" for relevant periods in response to individual RFPs. Regarding

RFP Nos. 16 and 17, Smucker searched the documents of custodian Jason Barr since it determined (and Smucker witnesses have since confirmed) that Jason Barr and counsel made the decision to terminate the Agreement. (*See also* Exhibit A, Smucker's Amended Responses to Tradeshift's Interrog. at pp. 2-3.)

Smucker's production has been robust, totaling 12,611 documents. Smucker produced 4,444 documents on November 25, 2020 and 5,426 documents on January 12, 2021. After Tradeshift asked Smucker to expand its production to include documents about other vendors, over its objection to relevance, but, in the spirit of compromise, Smucker produced another 2,188 documents on March 2, 2021. Smucker also made a small supplemental production of 377 documents. In late April, Tradeshift asked Smucker to run a specific search containing the abbreviations "TS" and "BQ." Smucker cooperated, ran the exact search dictated by Tradeshift, and the result was a mere 152 unique documents that Smucker produced on May 6, 2021.

During this time, Tradeshift was also responding to Smucker's RFPs. Tradeshift produced a mere 2,897 documents on November 24, 2020 and an additional 17 documents on March 25, 2021. In response to numerous meet and confer efforts, Tradeshift maintained that was the extent of their responsive documents, and then, on April 23, 2021, Tradeshift reproduced all of the documents it produced in the BuyerQuest action, which totaled an *additional 16,339 documents*, the majority of which are directly relevant but were withheld from production for unknown reasons. Smucker will address this issue at the appropriate juncture.

## III. Argument

Smucker collected documents from key employees with information about this dispute and ran reasonable searches in response to each of the RFPs at issue. As a result, Smucker produced over 12,000 documents. Five months later—and midway through depositions—Tradeshift contends this is inadequate. Tradeshift now demands that Smucker run broad-sweeping search terms against eight custodians without showing what unique, relevant information it might obtain or how the marginal utility of these searches will somehow outweigh the resources Smucker will expend in the process.

This is not only impracticable; it is not what the law requires. "[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006). Tradeshift could have dictated search terms and custodians at the outset. It did not. Absent agreement, Smucker was entitled to select custodians most likely to possess responsive information and search the files of those individuals. *See Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017) (holding the Court should not dictate search terms unless the party's choice is manifestly unreasonable or the resulting production is deficient). Smucker did so here. It identified the key employees involved at each relevant stage of the litigation (i.e., vendor selection, implementation, and termination) and created search terms tailored to each RFP. Smucker's choice of custodians and search terms was reasonable under the circumstances and proportional to the needs of this case.

Tradeshift argues two points: (1) that Smucker did not search all key custodians, and (2) that Smucker withheld internal communications from some custodians. (Letter Brief at p. 2.) First, Tradeshift relies on a draft organizational chart to support its argument that there are 29 Smucker employees involved with the project. This organizational chart, however, is not the most recent version

of the document, let alone dispositive of the key custodians in this case.[1] And Tradeshift's allegation that Smucker did not produce internal emails is likewise absurd. Smucker ran an illustrative search against the 12,611 documents it produced, and 4,683 documents—or 37%—are internal Smucker emails. Further, the alleged absence of documents surrounding the termination decision (responsive to RFP No. 19), either involved counsel or were prepared at the direction/with the advice of counsel and are properly recorded on Smucker's privilege log.

Perhaps the best evidence of why a motion on this issue is unnecessary is the fact that Tradeshift is asking this Court to compel Smucker to run searches that *it already did*. As previously noted, from the outset, terms such as "Tradeshift" and "BuyerQuest" were searched against key custodians for relevant periods. Further, in April 2021, Tradeshift asked Smucker to search "TS" and "BQ" against seven custodians. Again, Smucker cooperated. The result was a mere 152 noncumulative, responsive documents. Tradeshift's current proposal is to run those same terms against eight proposed custodians, *four of which were already searched as part of the April sample.*[2]

Tradeshift attempted this same tactic in its action against BuyerQuest. There, Tradeshift motioned to compel documents from six additional custodians, also during depositions. Unlike here where Tradeshift has not articulated a concrete reason for the additional discovery, Tradeshift argued that the six custodians were relevant to a supposed theory of liability. The Court denied Tradeshift's motion, holding that such a request was disproportional and would more than double the size of discovery in the late stage of the litigation. (See Exhibit B, Order Denying in Part Tradeshift's Motion to Compel at p. 4.)

Tradeshift has not, and cannot, demonstrate what noncumulative and relevant information it intends to glean from these documents or custodians to justify the immense burden that would be placed on Smucker. *See Mortg. Resolution Servicing*, 2017 WL 2305398, at *3 (denying request for additional custodians because "given the information already produced, the marginal utility of that possessed by [the new] custodians is low").

## IV. Conclusion

Even though it chose not to negotiate search terms, Tradeshift now believes it is entitled to Monday-morning quarterback the terms selected by Smucker. Without any authority or clear reasoning, Tradeshift demands that Smucker conduct broad searches for party names months after it received Smucker's initial, robust production. Not only that, Tradeshift asks that Smucker re-produce already deposed witnesses for a half-day of deposition. Tradeshift's proposed motion is simply evidence of the unwarranted measures it is willing to take to delay this case. Motion practice on this issue is unnecessary and will only lean into Tradeshift's strategy to squander Smucker's time and resources. Smucker therefore requests the Court deny further motion practice on this issue following a conference with the parties.

---

[1] A different version of this chart dated June 10, 2019 can be found at TJMSC0016801. It is not attached here to avoid complicating the filing with a separate motion to seal the document.

[2] Bryan Hiles, Kevin Hare, Mike Sterle, and Dan Nowicki were searched for the terms "TS" and BQ" in April 2021. (See Letter Brief, Ex.2 at p. 3). The remaining custodians (Mike Resan, Jay Watson, Viraaj Patel, and Colby Orr) were all initially searched by Smucker in November 2020. The search terms "Tradeshift" and "BuyerQuest" were ran against these four custodians at that time. As such, the only possible search terms that could yield new results are "TS" and "BQ" against custodians Mike Resan, Jay Watson, Viraaj Patel, and Colby Orr. As demonstrated by Smucker's compliance with the sample search resulting in only 152 documents, this search would also likely be fruitless.

Respectfully,

TUCKER ELLIS LLP

Chelsea Mikula

CHELSEA MIKULA

CMT:smf