# Exhibit D

# Yu, Jason K.

| | |
|---|---|
| **From:** | Fox, Savannah M. <Savannah.Fox@tuckerellis.com> |
| **Sent:** | Thursday, May 13, 2021 7:47 AM |
| **To:** | Yu, Jason K. |
| **Cc:** | Thiem, Carrie E.; Van Zant, Amy K.; Clements, Olivia; Mikula, Chelsea |
| **Subject:** | RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER) |
| **Attachments:** | DE Smucker Responses to PL Second Set of RPDs 5.3.2021_5142863_1.PDF; DE Smucker Responses to PL 2nd Set of INTs 5.3.2021_5142872_1.PDF; DE Smucker Responses to PL 1st Set of RFAs1 5.3.2021_5142881_1.PDF; DE Smucker Supplemental Responses to PL 2nd Set of INTs 5.13.2021_5143019_1.PDF |

Jason,

We write to respond to your below email.

It is important to note that Tradeshift has caused Smucker to spend considerable time and effort responding to countless meet and confer efforts in this matter. As you know, Smucker has worked in good faith to respond to Tradeshift and has agreed to expand the scope of discovery several times even though it disagrees with the requests. We have done so, however, to avoid discovery battles and focus on the merits of the case – yet Tradeshift keeps pushing for more. These recent requests and meet and confer letters have gone too far. Smucker will not continue to expand the scope of discovery without an end in sight.

First, this case has been pending since May 11, 2020. The parties engaged in significant written discovery in mid-2020, which resulted in Smucker producing thousands of documents, including two subsequent productions on the insistence of Tradeshift that more documents were needed. Tradeshift waited until March 26, 2021, to serve a second set of requests which significantly expanded the scope of discovery. As you are aware, discovery is to be proportional to the needs of the case. Yet, Tradeshift is doing everything possible to expand this case beyond what it is: a breach of contract action by Tradeshift for failure to issue payment and Smucker's fraudulent inducement and misrepresentation claims regarding Tradeshift's pre-contractual misrepresentations. We took the Second Set of Discovery Requests seriously. You are correct; there are a number of objections. However, these objections are warranted given the scope of your requests, which are irrelevant and not proportional to the needs of the case. We are entitled to assert our objections. To suggest that doing so is somehow improper eviscerates the discovery process.

With that being said, we will respond to each of your statements but hope that the parties can focus their efforts on what truly matters in this case rather than irrelevant discovery disputes, which is where Tradeshift appears to focus its efforts.

You are also correct that you received our discovery responses on May 3 versus April 30. We apologize for that error. As you will recall, given the scope of the requests and vacation schedules, Smucker requested a short ten-day extension through and including May 6. Continuing with its obstinate behavior, Tradeshift refused to give the extension unless Smucker agreed not to assert objections to the requests. Smucker rejected that unreasonable request and indicated it would send its responses on April 30. Due to a miscommunication, the requests were not sent on Friday even though they were finalized. The requests were sent on the following business day, Monday, May 3. Attached hereto are the

revised responses with an updated proof of service. Tradeshift cannot argue any undue delay or prejudice. To suggest otherwise is without merit.

For the reasons stated above and below, Smucker's objections are appropriate. There is a legitimate dispute regarding the scope of discovery in this case, and Smucker maintains its objections. The allegation that Smucker waived its responses is as absurd as refusing to grant the reasonable ten-day extension in the first place.

Regarding the individual requests, while Smucker maintains its objections, in an attempt to resolve these issues in good faith, Smucker has agreed to amend Interrogatories 10, 12, 13, 14, 15, and 23. The supplemental responses are attached hereto.

Smucker maintains its position that Interrogatory No. 11 is irrelevant and disproportional to the needs of the case. You have provided no reason to suggest otherwise. Stating that the information is not available in the metadata only confirms the broad scope of the request and to require a party to provide information beyond metadata is improper.

Interrogatories 16, 17, and 20, as well as Requests for Production 24, 25, 26, 27, 28, 29, 30, and 31, all relate to the contract with BuyerQuest that was entered into *after* the Tradeshift contract was terminated. Here, termination of the Tradeshift contract is where the scope of the discovery should end. We once again maintain our objections. The supposed relevance you articulated below was refuted by the testimony of Mr. Barr on May 12, 2021, on numerous occasions. To confirm, the scope of the BuyerQuest project is wholly irrelevant to Smucker's fraud claim. Tradeshift attempts to draw parallels between what Smucker required of Tradeshift and what Smucker later required of BuyerQuest. But what Smucker required of BuyerQuest—after investing six months of work on a failed project—does not speak to whether Tradeshift's misrepresentations before contracting were material, as Tradeshift contends. New York law is clear: misrepresentations are material if they intend to bring about a particular result and bring out that result. *Robitzek v. Reliance Intercontinental Corp.*, 7 A.D.2d 407, 183 N.Y.S.2d 870 (1st Dep't 1959), aff'd, 7 N.Y.2d 1041, 200 N.Y.S.2d 424, 167 N.E.2d 74 (1960); *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 170 (2d Cir. 1999) ("A misrepresentation is material to a fraud claim only if it is the type of misrepresentation likely to be deemed significant to a reasonable person *considering whether to enter into the transaction*.")(emphasis added). In other words, materiality is assessed at the time the parties entered into the agreement, not with the benefit of hindsight. Not to mention, Tradeshift has already made this argument in the BuyerQuest action. There, the Northern District of California held that requests about the BuyerQuest relationship were not proportional to the litigation and unduly burdensome. (Doc. 58.) The same reasoning applies here.

Smucker also maintains its responses to Interrogatories 18, 19, 20, 21, and 22, as well as Requests for Production 32-35 and 41.

Smucker further maintains its responses to its Requests for Admission, all of which were topics explored during and confirmed by the testimony of Mr. Barr during his deposition on May 12, 2021. Any allegation that the responses are "plainly contradicted" by the documents is based on a gross misreading of those documents, as again explained by Mr. Barr.

We certainly hope that this addresses your concerns, but please let us know if you wish to continue the meet and confer efforts.

Thank you,
Savannah

**Savannah M. Fox | Attorney | Tucker Ellis LLP**
Direct: 216-696-3950 | Cell: 330-417-7166

**From:** Yu, Jason K. <jasonyu@orrick.com>
**Sent:** Tuesday, May 4, 2021 6:41 PM
**To:** Fox, Savannah M. <Savannah.Fox@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Van Zant, Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

**<<< EXTERNAL EMAIL >>>**

Chelsea and Savannah:

We are in receipt of Smucker's incomplete and baseless objections and responses to Tradeshift's Special Interrogatories, Set Two, and Requests for Production, Set Two. Smucker clearly did not take the requests seriously and has provided only boilerplate objections for most of its responses. For the reasons set forth below, Tradeshift intends to immediately seek an informal conference with the Court regarding a motion to compel substantive responses. Please provide a time today or tomorrow that you are available to meet and confer telephonically.

1. <u>Smucker did not serve timely responses and thus has waived its objections</u>. Objections that are not made in a *timely* objection are waived. *Eldaghar v. City of New York Dep't of Citywide Admin. Servs.*, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) ("The law is well settled that a failure to assert objections to a discovery request in a timely manner operates as a waiver."). As discussed in the email chain below, Smucker's responses were due on April 26. Tradeshift agreed to extend the due date until April 30. Smucker did not server the responses until May 3. Relatedly, the certificate of service for your responses falsely certifies that the documents were served on April 30 and the date in the filename is incorrect. Please provide new copies with accurate certifications.

2. <u>Smucker's objections are boilerplate and non-substantive and thus waived</u>. Non-specific boilerplate objections are improper and result in waiver. *See e.g.*, *Leibovitz v. City of New York*, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) ("General boilerplate objections are inappropriate and unpersuasive . . . . The City lists general, boilerplate objections to each of plaintiff's requests for production. Because such objections violate Fed.R.Civ.P. 34(b)(2)(B), they are stricken.").

    a. Smucker provides nothing but boilerplate objections to at least Interrogatory Nos. 11, 12, 14, 15, 16, 17, and 20. In many cases, Smucker doesn't even bother to restate the objections and, instead, simply states "see objections and response to Interrogatory No. []." Other boiler plate objections are found throughout Smucker's responses.

    b. Smucker provides nothing but boilerplate objections to at least Document Request Nos. 24, 25-28, 29, 30, 31, 41. Other boiler plate objections are found throughout Smucker's responses.

3. <u>Smucker's objections are meritless</u>.

    a. <u>Interrogatories</u>:

i. Interrogatory No. 10: This Interrogatory asks Smucker to describe how it contends Tradeshift breached the Smucker Services Agreement, including by identifying the provisions that Tradeshift breached. Smucker objects that it does not understand the term "describe," and that the request calls for a legal conclusions. These are not good faith objections. Smucker clearly understands the term "describe, and it is black letter law that an interrogatory may seek a parties' contentions and require the application of law to fact. FRCP 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact")

ii. Interrogatory No. 11 asks Smucker to describe the documents stored on its SharePoint folder for the Smucker Project. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. Responding to this would be as easy as pulling the metadata from the documents on that Sharepoint. The information is clearly relevant as it will identify the official project documents for the Smucker project. That Smucker has produced those documents is irrelevant because it is unclear from the metadata Smucker provided which documents were collected directly from that Sharepoint (as opposed to drafts or other versions of such documents).

iii. Interrogatory Nos. 12-13 ask Smucker to identify the documents that were drafted and prepared by Tradeshift. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome (in fact, for No. 12, Smucker doesn't even bother to restate the objection and, instead, simply states "see objections and response to Interrogatory No. 11"). These are relevant to determining what confidential information of Tradeshift's Smucker is still in Smucker's possession and may have been used on the subsequent BuyerQuest/Smucker Project.

iv. Interrogatory Nos. 14-15 ask Smucker to identify instances in which Smucker used Tradeshift's confidential documents/information or send said confidential documents/information to BuyerQuest *after* the project was terminated. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. Any such use or disclosure would be a violation of Smucker's confidentiality obligations and a breach of the Services Agreement. The information is thus clearly relevant to Tradeshift's claim for breach and not overbroad or unduly burdensome.

v. Interrogatory No. 16 asks Smucker to describe its decision to hire BuyerQuest for the Smucker-BuyerQuest project. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. Responsive information will describe the timing of the decision, the persons involved, and the reasons for hiring BuyerQuest. The information is relevant to proving that Smucker's allegations of fraud were merely pretext for getting out of the contract with Tradeshift in order to hire BuyerQuest.

vi. Interrogatory No. 17 asks Smucker to describe Mr. Barr's conversations with BuyerQuest's CEO Mr. Mulloy. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. As noted in the documents cited by Tradeshift, these are the conversations that led to Smucker hiring BuyerQuest and terminating Tradeshift. They are directly relevant to Tradeshift's claim for breach and its defenses to Smucker's fraud claim. Nor

would be unduly burdensome for Smucker to describe the content of this handful of verbal conversations.

vii. Interrogatory Nos. 18 & 19 ask for additional information about Smucker's responses to Interrogatory Nos. 6 & 7. In those interrogatories, Smucker identifies (for what appears to the first time) a number of statements that Tradeshift made in response to the Smucker RFP and BRD that Smucker contends are misrepresentations. Interrogatory Nos. 18 and 19 ask Smucker to identify the first time Smucker realized those statements were misrepresentations and the first time Smucker notified Tradeshift of the misrepresentations. This information is directly relevant to determining whether such alleged misrepresentations were material. To the extent Smucker first identified these misrepresentations and provided notice to Tradeshift more than a year after Smucker terminated the contract is highly probative of the fact that these alleged misrepresentations are nothing but pretextual arguments created for litigation. The vague description that Smucker provides does not satisfy Smucker's obligations to provide a complete response to this interrogatory.

viii. Interrogatory No. 20 asks that, to the extent Smucker contends that BuyerQuest has provided any of the requirements that Smucker alleges Tradeshift could not provide, identify the requirement and describe the functionality provided by BuyerQuest. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. To the extent BuyerQuest also could not provide said functionality, that is probative of Tradeshift's contention that those requirements were not material to the project or Smucker's decision to hire Tradeshift and that Smucker is only identifying them as pretextual reasons for getting out of Smucker's contract with Tradeshift. Accordingly, contrary to Smucker's objections the request is directly relevant and not overbroad or unduly burdensome.

ix. Interrogatory 21 asks Smucker to identify the requirements it contends were incorporated into the Smucker Services Agreement including by identifying the provisions in the agreement. To the extent such requirements were or were not incorporated into the Smucker Services Agreement, that would be probative of Smucker's claim for breach of contract.

x. Interrogatory No. 22 asks Smucker to describe each instance in which Jason Barr deleted communications with BuyerQuest's CEO, Jack Mulloy, from his personal account. As you are aware, Mr. Barr has deleted at least one email from Mr. Mulloy (October 22) which Mr. Mulloy produced but Mr. Barr did not. Smucker objects that this information is not in its possession custody or control, but Mr. Barr is a Smucker employee and, accordingly, that is not true. *See, e.g., In re Auction Houses Antitrust Litig.*, 196 F.R.D. 444, 445 (S.D.N.Y. 2000) ("A party served with interrogatories is obliged to respond ... not only by providing the information it has, but also the information within its control or otherwise obtainable by it").

xi. Interrogatory No. 23 asks Smucker to describe any instances in which Jason Barr or any other Smucker employee received or presented the presentation BuyerQuest produced at BQ100227. This is a presentation that explains why Smucker should terminated Tradeshift and hire BuyerQuest. BuyerQuest has provided discovery responses indicating that this was a presentation "create by BuyerQuest for use by Smucker." Moreover, Mr. Mulloy testified that Mr. Barr specifically requested this presentation so that he could share it "upwards" at Smucker. Accordingly, responsive information is highly probative of Smucker's decision to

accuse Tradeshift of fraud and whether its allegations were merely pretext to hire BuyerQuest. It is not overbroad or unduly burdensome. Smucker also objects as this would require Smucker to disclose instances in which Smucker attorney's reviewed the document for purposes of this litigation. Tradeshift is not asking for such instances at this point.

b. <u>Document Requests</u>

   i. Request No. 24 asks Smucker to produce documents related to its decision to hire BuyerQuest. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. Responsive documents are directly relevant to proving that Smucker's fraud allegations were nothing more than a pretextual reason for getting out of the Smucker/Tradeshift Agreement so that Smucker could hire BuyerQuest.

   ii. Request Nos. 25, 25, 27, and 28 seek documents from the BuyerQuest-Smucker Project that refer or relate to Tradeshift, Tradeshift's work, Tradeshift's products or services, or Tradeshift's documents. Smucker asserts boilerplate objections that the requests are irrelevant, disproportional, overbroad, and unduly burdensome. These request seek communications about Tradeshift. Such communications are most certainly relevant as the only reason to refer to Tradeshift, its work, or its documents would be to (1) discuss Tradeshift's work and performance on the initial project or (2) to leverage Tradeshift's confidential work and documents on the second project. In either even the documents are directly relevant.

   iii. Request Nos. 29 and 30 seek documents related to Smucker's costs for the Smucker-BuyerQuest project. Smucker asserts boilerplate objections that the requests are irrelevant, disproportional, overbroad, and unduly burdensome. To the extent those costs are less than the costs required for the Tradeshift-Smucker project, it would prove Smucker's motivation for terminating the Smucker contract in favor of a contract with BuyerQuest. Such information goes to Tradeshift's claims for breach and Smucker's allegations of fraud, which Tradeshift contends are nothing but pretext.

   iv. Request Nos. 31 seeks documents relevant showing whether BuyerQuest was able to meet the requirements that Smucker contends Tradeshift misrepresented its ability to meet. Smucker asserts boilerplate objections that the request is irrelevant, disproportional, overbroad, and unduly burdensome. To the extent BuyerQuest also could not provide said functionality, that is probative of Tradeshift's contention that those requirements were not material to the project or Smucker's decision to hire Tradeshift and that Smucker is only identifying them as pretextual reasons for getting out of Smucker's contract with Tradeshift. Accordingly, contrary to Smucker's objections the request is directly relevant and not overbroad or unduly burdensome.

   v. Request Nos. 32-35 and 41 ask for documents related to Smucker's responses to Interrogatory Nos. 6 & 7. In those interrogatories, Smucker identifies (for what appears to the first time) a number of statements that Tradeshift made in response to the Smucker RFP and BRD that Smucker contends are misrepresentations. Request for Production Nos. 32-35 ask for documents showing the first time Smucker realized those statements were misrepresentations and the first time Smucker notified Tradeshift of the misrepresentations. This information is directly relevant to determining whether such alleged misrepresentations were material. To the extent Smucker first identified these misrepresentations and provided notice to Tradeshift more than a year after Smucker terminated the contract is highly probative of the fact that these alleged

6

misrepresentations are nothing but pretextual arguments created for litigation. Smucker's response that the information is not in a document does not make sense, particularly for the requests about any notice that Smucker provided to Tradeshift. Moreover, to the extent that is the case, then Smucker should confirm that it has produce all responsive documents or that no such documents exist.

    vi. In response to Request Nos. 36-37, 40 Smucker responds that any responsive documents "would have already been produced by Smucker." This response is vague and does not appear to satisfy Smucker's obligations. Smucker should confirm in its responses that it has produced all responsive documents.

  c. Requests for Admission

    i. RFA No. 6: These requests asks Smucker to admit that Jason Barr spoke with Jack Mulloy regarding the Smucker Project on October 21, 2019,;November 20, 2019; and December 19, 2019 (respectively). In response, Smucker admits that Jason Barr "may" have spoken with Jack Mulloy on those dates, but does not admit that it was without Tradeshift employees or that it was about the Smucker Project. These are not responsive.

    ii. RFA No. 16 asks Smucker to admit that Jason Barr deleted emails that he received from BuyerQuest's CEO at his personal email address. Smucker responded that it cannot admit or deny this request regarding Mr. Barr's account. Smucker's response is deficient. Smucker must make a reasonably inquiry to obtain the information including from its employee, Mr. Barr. *See, e.g.*, T. *Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co.*, 174 F.R.D. 38, 43 (S.D.N.Y. 1997) ("In responding to a properly stated request, a party must make "reasonable inquiry" of "information known or readily obtainable by him" that allows him to fairly admit or deny the request."); *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) ("In the context of requests for admissions, "reasonable inquiry" includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. In this connection, relevant documents and regulations must be reviewed as well.") Moreover, Smucker has already conducted that investigation and determined that Mr. Barr did, in fact, delete such emails. As we have discussed in conferrals regarding Mr. Barr's email, Mr. Mulloy produced a document he sent to Mr. Barr in October of 2019 and you have already indicated that Mr. Barr no longer has this document in his account. Accordingly, it is undisputed that Mr. Barr deleted this email.

    iii. RFA Nos. 5, 9, 10, 11, 12: These requests ask Smucker to admit that BuyerQuest (e.g., Jack Mulloy) recommended/encouraged/urged Smucker (e.g., Jason Barr) to terminate Tradeshift and hire BuyerQuest for the project or at least to make a decision about the issue. Smucker denies these requests. Those denials are plainly contradicted by documents that have been produced in this matter and Tradeshift intends to seek its fees for having to prove these points, which should not be in dispute.

Please provide a time today or tomorrow you can meet and confer.

Thanks,
Jason

**From:** Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Sent:** Monday, May 3, 2021 1:25 PM
**To:** Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>; Yu, Jason K. <jasonyu@orrick.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Van Zant, Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

Jason,

Attached please find Smucker's discovery responses.

Thank you,
Savannah

**Savannah M. Fox | Attorney | Tucker Ellis LLP**
Direct: 216-696-3950 | Cell: 330-417-7166

---

**From:** Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>
**Sent:** Monday, May 3, 2021 3:59 PM
**To:** Yu, Jason K. <jasonyu@orrick.com>; Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Van Zant, Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

Jason,

I don't appreciate the gotcha email. I am in witness prep right now but it appears that was an inadvertent error and they will be sent to you shortly, including objections and substantive responses.

Chelsea

Chelsea Mikula
216-696-2476

---

**From:** Yu, Jason K. <jasonyu@orrick.com>
**Sent:** Monday, May 3, 2021 2:11 PM
**To:** Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>; Van Zant, Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

**<<< EXTERNAL EMAIL >>>**

Hello Savannah,

We did not receive any responses to Tradeshift's March 26, 2021 Requests for Production, Interrogatories, and Requests for Admission by the agreed upon April 30, 2021 date. Smucker has thus waived its objections to those requests. Please confirm that Smucker will provide substantive response by COB on Wednesday. If Smucker does not plan on serving substantive responses, please let us know Smucker's reasons for refusing to do so. Tradeshift reserves all rights with respect to these requests and untimely responses.

Thanks,
Jason

---

**From:** Yu, Jason K.
**Sent:** Saturday, April 24, 2021 8:04 AM
**To:** 'Fox, Savannah M.' <Savannah.Fox@tuckerellis.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>; Van Zant, Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

Hello Savannah,

Tradeshift is okay with April 30.

Thanks,
Jason

---

**From:** Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Sent:** Saturday, April 24, 2021 7:42 AM
**To:** Yu, Jason K. <jasonyu@orrick.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>; Van Zant, Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

Hello Jason,

We cannot confirm that we will provide substantive responses to all of your requests, as we believe several are improper. As a result, we will serve them by April 30, if not sooner. Please let us know if the four-day extension is unacceptable.

Thanks,
Savannah

**Savannah M. Fox | Attorney | Tucker Ellis LLP**
Direct: 216-696-3950 | Cell: 330-417-7166

**From:** Yu, Jason K. <jasonyu@orrick.com>
**Sent:** Friday, April 23, 2021 7:24 PM
**To:** Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>; Van Zant,

Amy K. <Avanzant@orrick.com>; Clements, Olivia <oclements@orrick.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

**<<< EXTERNAL EMAIL >>>**

Hello Savannah,

Thanks for your email.  Can you please include Amy and Olivia on these correspondence as well?

We are willing to agree to the extension, but would like to confirm that Smucker is seeking the extension for purposes of providing substantive responses.  Given the upcoming deadlines and depositions, we don't think it makes sense to wait ten additional days just to start conferring about interrogatories that Smucker isn't going to answer anyway.

Thanks,
Jason

**From:** Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Sent:** Thursday, April 22, 2021 6:52 AM
**To:** Yu, Jason K. <jasonyu@orrick.com>
**Cc:** Thiem, Carrie E. <Carrie.Thiem@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>
**Subject:** RE: Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

Jason,

Smucker's deadline to respond to the below discovery requests is currently April 26. Would you agree to a 10-day extension (until May 6) for these responses, including the RFAs? We are trying to work around vacations on the client-side.

Thanks,
Savannah

**Savannah M. Fox | Attorney | Tucker Ellis LLP**
Direct: 216-696-3950 | Cell: 330-417-7166

**From:** Virrueta, Sema <svirrueta@orrick.com>
**Sent:** Friday, March 26, 2021 7:46 PM
**To:** Schmelz, Ronie M. <Ronie.Schmelz@tuckerellis.com>; Mikula, Chelsea <Chelsea.Mikula@tuckerellis.com>; Fox, Savannah M. <Savannah.Fox@tuckerellis.com>
**Cc:** Yu, Jason K. <jasonyu@orrick.com>
**Subject:** Service - Tradeshift, Inc. v. Smucker Services Co. - Case No. 1:20-cv-03661(ER)

**<<< EXTERNAL EMAIL >>>**

Counsel, attached please find Tradeshift, Inc.'s service of discovery as follows:

1. Tradeshift's First Set of RFAs to Smucker;
2. Tradeshift's Second Set of ROGs to Smucker; and

3. Tradeshift's Second Set of RFPs to Smucker.

Regards,

**Sema Virrueta**
Executive Assistant to Denise Mingrone, Bas de Blank,
Jake Heath, Rob Uriarte & Jason Yu

Orrick
Silicon Valley  Ⓥ
T +1-650-614-7470
Schedule: Mon; Wed-Fri: 9am-5pm
svirrueta@orrick.com



**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.

**NOTICE TO RECIPIENT** | This e-mail is meant for only the intended recipient of the transmission, and may be a communication privileged by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of this e-mail is strictly prohibited. Please notify us immediately of the error by return e-mail and please delete this message from your system. Thank you in advance for your cooperation.

For more information about Orrick, please visit *http://www.orrick.com*.

In the course of our business relationship, we may collect, store and transfer information about you. Please see our privacy policy at https://www.orrick.com/Privacy-Policy to learn about how we use this information.