

950 Main Avenue, Suite 1100 | Cleveland, OH  44113 | TEL 216.592.5000 | FAX 216.592.5009

November 8, 2021

DIRECT DIAL  216.696.2476 | chelsea.mikula@tuckerellis.com

*Via ECF*

Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

*Re: Tradeshift, Inc. v. Smucker Services Co., Case No. 1:20-cv-3661-MKV*

Dear Judge Vyskocil,

Under the Court's Individual Rules of Practice 2(B) and 4(A)(i), Defendant and Counterclaim Plaintiff Smucker Services Company writes to respond to Plaintiff and Counterclaim Defendant Tradeshift, Inc.'s November 3, 2021 letter. Tradeshift seeks permission to file a motion asserting a Rule 12(b)(6) defense, arguing Smucker: (1) fails to state a plausible breach of contract counterclaim; (2) does not sufficiently allege fraud under New York law; and (3) cannot seek punitive damages. (*See* Doc. 103, pp. 1–3.) But there is no reason to accept the issues as Tradeshift frames them.

## DISCUSSION

If the Court does not deny Tradeshift's request outright, it should limit briefing to three issues that cut to the heart of Smucker's counterclaims. Those discrete issues are whether: (1) Smucker has plausibly alleged fraudulent intent; (2) the breach of contract and fraud counterclaims can coexist; and (3) punitive damages are available and warranted. The clear answer to each question is evident based on Smucker's well-pled amended counterclaim.

1. **Rule 12(g) prohibits Tradeshift from challenging the breach of contract counterclaim; if allowed the claims are sufficiently pled.**

Smucker previously answered and counterclaimed against Tradeshift, which moved to dismiss *only* the fraud-based counterclaims under Federal Rule of Civil Procedure 12(b)(6), and the Court granted that motion. (*See* Docs. 16, 30, & 98.) Tradeshift now wants to challenge *both* the fraud and breach of contract counterclaims under Rule 12(b)(6). (Doc. 103, p.2.)

But that is not how Rule 12 works. Tradeshift cannot "make another motion" that raises "a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g). That is, because Tradeshift chose not to challenge the breach of contract counterclaim in its first Rule 12(b)(6) motion, it cannot do so now in a



November 8, 2021
Page 2

second motion under the same rule.[1] Based on a straightforward application of Rule 12, the Court should deny Tradeshift's request to file a second Rule 12(b)(6) motion that challenges the sufficiency of the breach of contract counterclaim.

That said, if the Court allows Tradeshift to ignore Rule 12(g), any attack on the sufficiency of the facts supporting Smucker's breach of contract counterclaim fails. Viewed in Smucker's favor, the facts clearly support each element required under New York law. (*Id.*, ¶¶ 92–119.) Tradeshift attempts to muddy the issue by arguing Smucker "fails to identify the specific SSA provisions that were allegedly breached." (Doc. 103, p.3 (citing *Gao v. JP Morgan Chase & Co.*, No. 14 Civ. 4281, 2015 WL 3606308, at *2 (S.D.N.Y. June 9, 2015) (applying Delaware law)).) Not only is this wrong, it is disingenuous. Smucker provides careful detail about what exactly Tradeshift failed to do, what its system could not achieve, and how each failure constituted a breach of contract. (*See* Doc. 99, ¶¶ 106–111.)

## 2. Smucker has adequately alleged fraudulent intent, which is the only challenge to the fraud claim Tradeshift should be allowed to raise.

The Court previously held that Smucker sufficiently alleged the elements required for fraud, except intent. (*See* Doc. 98, pp. 10–15.) Accordingly, it should be the only component Tradeshift can challenge again. The Court's findings as to the rest constitute the law of the case. *See, e.g.*, *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) ("The law of the case doctrine forecloses reconsideration of issues that were decided—or could have been decided—during prior proceedings."). The Court's prior decision "should generally be adhered to" later on "unless cogent and compelling reasons militate otherwise." *Id.* (cleaned up). None do, and the prior decision should control as to the other elements of fraud.

Regarding intent, Smucker has alleged a panoply of facts that demonstrate Tradeshift acted with the requisite scienter to commit fraud.[2] Smucker provides both direct and circumstantial evidence of Tradeshift's motive and intent to induce Smucker into choosing Tradeshift from among its competitors, despite full-well knowing Tradeshift could not deliver. (*See, e.g.*, Doc. 99, ¶¶ 31–33; 39–48; 67–71.) Smucker's amended counterclaim includes strong evidence that Tradeshift—at worst knowingly, or at least recklessly—engaged in fraudulent behavior. It had internal access to information that contradicted external statements made to Smucker, as well as those to the public through its press releases. (*See id.*) Tradeshift's purpose in all this was to, among other motives, deceive Smucker into believing it was a qualified vendor. (*See id.*) Beyond just profit motive, in the amended counterclaim Smucker alleges not only that Tradeshift had motive and opportunity to commit fraud (*id.*, ¶¶ 39–47), but that it also wanted to use

---

[1] Although Rule 12(g) does not "bar a later motion to dismiss" where an amended pleading "contains *materially different* allegations[,]" the facts that formed the foundation of Smucker's initial breach of contract counterclaim are nearly identical to those it re-alleges here. *CV Collection LLC v. Weworewhat LLC*, Nos. 20 Civ. 8623, 21 Civ. 1623, 2021 WL 4942625, at *3 (S.D.N.Y. Oct. 22, 2021) (emphasis added). (*Compare* Doc. 16, ¶¶ 39–58 *with* Doc. 99, ¶¶ 92–119.) Any contrary argument fails. Tradeshift made a strategic decision it must accept; it did not raise this defense before and cannot do so in this way now.

[2] Based on the Court's Order, Smucker did not re-allege a counterclaim for negligent misrepresentation.



Smucker as a springboard to lure more domestic clients, of which it had few (*id.*, ¶¶ 28–30). These specific examples and the amended counterclaim as a whole paint a clear picture that Tradeshift's motives for lying to Smucker went beyond profit.

### 3.  Smucker's fraud claim is not duplicative of the breach of contract claim.

Further, the fraud counterclaim does not overlap with the breach of contract counterclaim, and both survive. Tradeshift's fraud was "collateral" and "extraneous to" the contract, and Smucker seeks fraud-based damages that are separate from contract damages. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (discussing scenarios where fraud and breach of contract claims both survive). Tradeshift's fraud predates contracting; Tradeshift's breaches occurred afterward. The facts are separate and so are Smucker's damages. The counterclaims can coexist.

### 4.  The Court should not strike Smucker's request for punitive damages.

Finally, Smucker seeks punitive damages based on Tradeshift's fraud, separate from and in addition to the damages it seeks for Tradeshift's breach of contract. (Doc. 99, ¶¶ 137, 143.) Although the Court previously struck this request, it did so on the basis that the facts did not sufficiently show Tradeshift engaged in "a pattern of behavior directed at the public at large." (Doc. 98, pp. 19–20.) The Court similarly determined that because there was no independent tort—*e.g.*, fraud—that was "sufficiently egregious," the punitive damages request could not stand. (*Id.* at p. 20.) Tradeshift merely recites this previous rationale, arguing that because the Court determined the initial pleading was insufficient, the amended pleading is as well. (Doc. 103, pp. 3–4.)

That argument holds little weight. Tradeshift defrauded the public and its own employees by making demonstrably false statements about its relationship with Smucker. Smucker also alleges that Tradeshift has a pattern and practice of luring U.S. customers into contracts that it knows it cannot handle, which it then touts in an effort to increase its U.S. presence and raise capital through exempt offerings. Moreover, the fraud counterclaim is sufficient and constitutes an independent tort; further, Tradeshift's behavior was wantonly dishonest. The amended counterclaim satisfies all of *Rocanova*'s requirements, ameliorates the initial counterclaim's shortcoming, and makes clear that Smucker is entitled to punitive damages.

### CONCLUSION

In sum, Smucker's amended counterclaim remedies each defect the Court identified in its September 29, 2021 Order. The Court could deny Tradeshift's request on this basis alone. If not, Tradeshift's request to engage in a wholesale review of each element of fraud—despite the Court already addressing each—while simultaneously attempting to flout Rule 12(g) and challenge the breach of contract counterclaim need not be entertained. Instead, Smucker requests the Court deny Tradeshift permission to file a motion to dismiss or alternatively limit any such briefing to the core issues discussed above.



Respectfully,

TUCKER ELLIS LLP

Chelsea Mikula